UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/16/2026

------------------------------------------------------------------ X
                :
HASAHN MURRAY,           :
                :
           Petitioner,  :          1:19-cr-702-GHW
                :          1:26-cv-3911-GHW
      -v-          :
                :          ORDER
UNITED STATES,         :
                :
          Respondent.  :
                :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

Hasahn Murray filed a petition for *habeas corpus* under 28 U.S.C. § 2255 ("Section 2255") to challenge the legality of his conviction and sentence in this case.  In his motion, Mr. Murray asserted that his counsel provided ineffective assistance both during plea negotiations and following the imposition of his sentence.  But he acknowledged that he missed the deadline to file a petition for *habeas corpus* under Section 2255, and therefore asked that the Court equitably toll the statute of limitations.

On May 8, 2026, the Court issued an order to show cause why Mr. Murray's petition should not be dismissed as untimely.  Dkt. No. 179 (the "OTSC").[1]  Mr. Murray's response to the OTSC does not establish that he acted diligently to pursue his rights during the years after the statute of limitations expired.  Therefore, Mr. Murray's petition is dismissed as untimely.

### I.    BACKGROUND

The Court refers the reader to the OTSC, which describes the background of this case and Mr. Murray's petition for habeas corpus.  *See generally* OTSC.  Mr. Murray filed a response to the OTSC on June 11, 2026.  Dkt. No. 181 (the "Response").  In the Response, Mr. Murray affirms that

---

[1] Terms used without definition in this order have the meaning provided in the OTSC.

his counsel informed him that "he would file an appeal/motion for me if/when-ever the state conviction was overturned on appeal." Response at 1.[2] Mr. Murray wrote that he was in custody "through October 2022 when state convictions were finally reversed . . . ." *Id.* at 2. Mr. Murray "immediately reached out to Mr. Bertran of this development . . . ." *Id.* Mr. Murray asserts that in January 2023, he wrote to the Clerk of Court for an update on the appeal that he "believed Mr. Bertran had filed on my behalf," but he did not receive a response. *Id.*

In that period, Mr. Murray's state court attorney advised him that there "might not be anything that could be done until there was an outcome for the new trial that was ordered" as a result of the vacatur of his conviction. *Id.* at 3. So Mr. Murray waited another 16 months until the decision was made not to try him again. *Id.* Mr. Murray reached out again to Mr. Bertran and, again, Mr. Murray received no response *Id.* Mr. Murray wrote Mr. Bertran again in May 2024 by email and regular mail and "asked about filing motion or anything under newly discovered evidence for the acquitted conduct . . . ." *Id.* Again, Mr. Bertran received no response.

In March 2025, Mr. Murray requested the materials required to file a 2255 motion from the Clerk of Court. *Id.* He received the materials, but the paperwork was taken from his cell. Mr. Murray requested another "2255 packet" in July 2025, but "did not receive one." *Id.*

On January 6, 2026, Mr. Bertran wrote Mr. Murray. *Id.* Ex. A. Mr. Bertran wrote that he "recently received" a letter from Mr. Murray. Mr. Bertran's letter does not identify to which letter he was responding, but Mr. Bertran explained that he had moved his office in 2021 "and only

---

[2] In his Response, Mr. Murray, now having read *United States v. Medley*, 300 F. App'x 14 (2d Cir. 2008), describes Mr. Bertran's commitment as one to file an "appeal/motion." Response at 4. In his underlying petition, Mr. Murray consistently described Mr. Bertran's alleged commitment as one to file a "motion." Mr. Murray's use of language has shifted to suggest a commitment by Mr. Bertran to file an appeal as support for Mr. Murray's new request for a "Fuller hearing." As Mr. Murray was advised at sentencing, any appeal was required to be filed "within 14 days of the judgment of conviction." Tr. at 29:19-20. The alleged commitment by Mr. Bertran was to file a motion after Mr. Murray's state conviction was reversed, which ultimately occurred five months after Mr. Murray's sentencing. Mr. Murray's attempt to reframe Mr. Bertran's alleged commitment as one to file a notice of appeal does not affect the Court's conclusion that the petition is untimely.

recently received the letter." *Id.* Mr. Bertran explained that he had reviewed the presentence report and had concluded that if "the robbery conviction is removed from [the criminal history calculation] you would have 11 criminal history points, putting you in criminal history category 11. Unfortunately, given the offense level of 40, the change makes no difference in the advisory guidelines range for sentencing. It is still 360-life." *Id.*

Mr. Bertran also explained that he was "not sure you would be re-sentenced to a lower sentence. If you recall, your Federal sentence was 170 months, which was based on the judge giving you credit for the 70 months you had already served on the State conviction. It is possible that the judge would . . . take away that credit, giving you a longer sentence." *Id.* Mr. Bertran asked Mr. Murray to write to him if he wanted to discuss the issue further. *Id.*

Mr. Murray summarized his efforts to file his habeas petition as follows: "I did show required Due Diligence and that equitable tolling [is] required in my situation. Notably, that I, Hasahn Murray did write numerous letters between 2022-2025 concerning my appeal and in 4 out of 5 letters I received no response." Response at 4.

## II.      DISCUSSION[3]

### A.      Statute of Limitations

Mr. Murray's petition must be denied as time-barred under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "imposes a one-year statute of limitations on motions to set aside sentences imposed, inter alia, 'in violation of the Constitution or laws of the United States.'" *United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (citing 28 U.S.C. § 2255(a), (f)), cert. denied, 589 U.S. 1227 (2020). The one-year statute of limitations runs from the latest of a number of "triggering events" enumerated in the statute. *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir.

---

[3] Because Mr. Murray is proceeding *pro se*, the Court construes each of his submissions in support of the Motion "liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

2012).  These events include:  (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2255(f).

The fourth category of "triggering events" is at issue in this case.[4]  When a petitioner attacks "his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated. . . .[,] the [limitations] period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence."  *Johnson*, 544 U.S. at 298.  Here, Mr. Murray's March 6, 2018 conviction for second-degree robbery and related offenses was reversed by the New York Court of Appeals on October 20, 2022.  *See People v. Hasahn D. Murray*, 39 N.Y. 3d 10 (2022).  That conviction was included in the pre-sentence report considered by the Court at sentencing.  It yielded three of Mr. Murray's 14 criminal history points.  The Court accepts, for purposes of this order, that the vacated state conviction was used to enhance Mr. Murray's sentence.[5]  As a result, the statute of limitations began when Mr. Murray received notice of the order vacating that conviction.  Mr. Murray received notice of the order shortly after it was issued.

---

[4] The petition would be even more untimely if the statute of limitations was measured from the date on which Mr. Murray's conviction became final.  Mr. Murray's judgment of conviction was entered on May 31, 2022.  Dkt. No. 126. As he did not appeal, his conviction became final on June 14, 2022, fourteen days after the judgment was entered.  *See* Fed. R. App. Pro. 4(b)(1) (allowing 14 days to file notice of appeal from judgment of conviction); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires.").  Measured from the date on which the judgment became final, the one-year limitations period expired on June 14, 2023, about two and a half years before Mr. Murray filed his motion.

[5] Mr. Murray's guidelines range was driven by the crime's offense level—40.  Regardless of whether Mr. Murray's criminal history category was VI—as it was with the inclusion of the three criminal history points resulting from the vacated robbery conviction—or V, as it would have been without those points, Mr. Murray's guidelines range of 240 months imprisonment would have been the same.  However, because the Court considered the existence of the conviction in sentencing Mr. Murray, the Court accepts that the conviction "enhanced" Mr. Murray's sentence.

Response at 2.  Because Mr. Murray received notice of the vacatur of his conviction no later than November 1, 2022, his petition was filed more than two years and three months late.

### B.      Equitable Tolling

Mr. Murray is not entitled to equitable tolling.  "The Supreme Court has confirmed that AEDPA's statute of limitations is not jurisdictional and 'does not set forth "an inflexible rule requiring dismissal whenever" its "clock has run."'"  *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010)).  "This is because although AEDPA seeks to eliminate delays in the federal habeas review process, it does not do so at the expense of basic *habeas corpus* principles, or prior law that a petition's timeliness has always been determined under equitable principles."  *Wright*, 945 F.3d at 684 (quotations and brackets omitted) (citing *Holland*, 560 U.S. at 649–50).  "As a result, even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows:  '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Id.* (quoting *Holland*, 560 U.S. at 649).

"To warrant equitable tolling, 'the circumstances of a case must be 'extraordinary.'"  *Id.* (quoting *Holland,* 560 U.S. at 652).  "When determining what constitutes 'extraordinary' circumstances, . . . 'the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'"  *Id.*

"Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling."  *Id.* at 685.  "The only diligence required for the application of equitable tolling is 'reasonable diligence'—we do not require 'maximum feasible diligence.'  Even so, 'we expect even *pro se* petitioners to know when the limitations period expires and to understand the need to file a habeas motion within that limitations period.'"  *Id.* (internal citation and brackets

5

omitted) (first quoting *Holland*, 560 U.S. at 653, then quoting *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004)).

None of the facts described by Mr. Murray in his motion, his reply or his Response to the OTSC justify the invocation of equitable tolling in this case. Mr. Murray asserts that he attempted to contact Mr. Bertran three times by letters sent in October 2022 and then in April and May 2024. He did not hear back from Mr. Bertran. He did not receive confirmation that any action had been taken on his behalf. Then, "[n]otwithstanding a less than rudimentary understanding of the law and nearly no access to law library computer throughout majority of 2024–2025, Mr. Murray inquired into potential relief available from so-called Jailhouse lawyer." Reply at 2–3. Mr. Murray goes on to note the frequency of lockdowns that occurred in USP Canaan and his "inability to access legal materials" or "shop commissary." *Id.* at 3. Finally, Mr. Murray wrote to the Clerk of Court in 2025 to obtain a "2255 packet."

For purposes of this order to show cause, the Court assumes without holding that Mr. Murray has shown that extraordinary circumstances justify equitable tolling. "The presence of extraordinary circumstances is not enough, however, to justify the application of equitable tolling. A petitioner must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." *Baldayaque*, 338 F.3d at 153.

The facts presented by Mr. Murray in support of his Motion do not demonstrate sufficient diligence to justify application of equitable tolling. Mr. Murray's decision to wait for an attorney—or jail house lawyer—does not satisfy his obligation to diligently pursue his petition. "Even where the extraordinary circumstances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004). "In other words, the act of retaining an attorney does not absolve the petitioner of his responsibility for

6

overseeing the attorney's conduct or the preparation of the petition.  Particularly because petitioners often are fully capable of preparing and filing their habeas petitions *pro se,* and *pro se* status does not in itself constitute an extraordinary circumstance meriting tolling, it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se.*"  *Id.* (internal citations omitted).  Three letters to a lawyer about pursuing a motion over the course of over three years do not constitute diligence.  Mr. Murray eventually requested a "2255 packet" from the Clerk of Court, but did not do so until 2025—long after the deadline to file a petition.  And he did not file this petition until January 2026.  At base, the fact that Mr. Murray sent correspondence to Mr. Bertran to which Mr. Murray did not receive a response does not justify Mr. Murray's failure to act on his own behalf.  Mr. Murray knew that he had not received a response to his correspondence.  Rather than relying on counsel—or a jailhouse lawyer—acting diligently, Mr. Murray could have filed his petition *pro se*, as he eventually did.

## III.    CONCLUSION

The Court considers Mr. Murray's Motion to be a petition under Section 2255.  That petition is time-barred and must be denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Mr. Murray has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of Court is directed to enter judgment for the United States in 1:26-cv-3911 and to close that case. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 180 and 181 in 1:19-cr-702. The Clerk of Court is also directed to mail a copy of this order to Mr. Murray.

SO ORDERED.

Dated:  June 16, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge